UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TRENTON DAVON FYE,<br><br>Plaintiff,<br><br>v.<br><br>WARDEN SMILEY, et al.,<br><br>Defendants. | CAUSE NO. 3:25-CV-495-CCB-SJF |

## OPINION AND ORDER

Trenton Davon Fye, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 1.) Pursuant to 28 U.S.C. § 1915A, the court must screen this pleading and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To survive dismissal, a complaint must contain sufficient factual matter to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Fye is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## FACTS

Fye is incarcerated in the Westville Control Unit ("WCU"), a restrictive housing unit within Westville Correctional Facility. As a preliminary matter, Fye appears to ask

that this lawsuit be kept out of the public record entirely. (ECF 1 at 2.) However, the Seventh Circuit has made clear that "the public at large pays for the courts and has an interest in what goes on at all stages of a judicial proceeding." *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). Therefore, "[w]hat happens in the halls of government is presumptively open to public scrutiny," and "[j]udges . . . issue public decisions after public arguments based on public records." *Matter of Krynicki*, 983 F.2d 74, 75 (7th Cir. 1992). Nevertheless, the court has endeavored to keep sensitive details out of this opinion to the extent possible.

Fye claims that in March 2025, he submitted a number of grievances containing information about the activities of alleged gang members at his prison. He asked that they be hand-delivered to Warden Jason Smiley, but he does not know if his request was carried out. A few weeks later, he received a grievance response form back from Grievance Specialist Shannon Smith, but his original grievances were not attached. He later found out that the grievances had been mistakenly attached to another grievance response and delivered to another inmate. This inmate, in turn, told other inmates about the information the grievances contained. As a result, Fye claims other inmates have labeled him a "snitch" and are threatening him. Although he is currently in a restrictive housing unit where inmates are closely monitored at all times, he is concerned about what will happen if he is returned to general population.

He subsequently filed a grievance about Grievance Specialist Smith's mishandling of his original grievances but claims he did not receive a response. He believes she and others are conspiring to prevent him from exhausting his

2

administrative remedies. Based on these events, he sues Grievance Specialist Smith and Warden Smiley seeking $2 million in damages and various forms of injunctive relief.

## ANALYSIS

The Eighth Amendment imposes a duty on prison officials to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must allege that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). To be held liable, a defendant must have "acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger." *Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008).

Although it is unfortunate this incident happened, Fye has not alleged a plausible Eighth Amendment claim against Grievance Specialist Smith. From what he has described, there appears to have been an inadvertent error related to his grievance paperwork. He has not provided factual content from which the court could plausibly infer that she acted in a "conscious, culpable" manner. *Santiago*, 599 F.3d at 756.

"[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to assert an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020).

Likewise, Warden Smiley cannot be held liable for damages simply because he supervises Grievance Specialist Smith. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). The court cannot plausibly infer from what he has alleged that Warden Smiley was personally involved in misdelivering his grievances to the other inmate. Nevertheless, Fye's complaint can be read to allege that he has an ongoing need for protection as a result of this incident. The Warden has both the authority and the responsibility to ensure that inmates at his facility are protected from harm posed by other inmates as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Fye will be permitted to proceed on an Eighth Amendment claim against the Warden in his official capacity for injunctive relief related to his ongoing need for protection from other inmates.

Fye also appears to be claiming that his constitutional rights were violated in connection with the mishandling of his grievances. However, "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause." *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011); *see also Daniel v. Cook Cty.*, 833 F.3d 728, 736 (7th Cir. 2016). If his exhaustion of administrative remedies becomes an issue at a later stage, he is free to argue that the grievance process was rendered unavailable to him. *See*

4

*Woodford v. Ngo*, 548 U.S. 81, 102 (2006). However, his allegations do not give rise to an independent constitutional claim.

He also mentions interference with his "legal mail." (ECF 1 at 8.) Inmates have a First Amendment right to send and receive items through the U.S. mail. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). "Legal mail" is entitled to greater protection, but this a term of art referring to mail to or from the inmate's legal counsel. *Kaufman v. McCaughtry*, 419 F.3d 678, 686 (7th Cir. 2005). This type of mail cannot be opened outside the inmate's presence to protect his privileged communications with his attorney, but it must be marked with an attorney's name and bear a warning on the envelope that it contains legal mail. *Id.* Other types of mail can be opened outside an inmate's presence without violating his First Amendment rights. *Id.*

Fye does not allege that prison staff opened a privileged communication to or from his attorney. Indeed, he does not describe interference with any items sent through the U.S. mail. Rather, he describes an incident involving a mix-up with his grievances sent through internal channels at the prison. This does not state a plausible First Amendment claim.

He also appears to invoke a right to privacy under the substantive Due Process Clause. (ECF 1 at 7.) Constitutional claims must be analyzed under the most "explicit textual source of constitutional protection," rather than under the general rubric of substantive due process. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Fye's claims are more appropriately analyzed under the Eighth Amendment and the First Amendment as outlined. Furthermore, inmates have limited privacy rights in prison. *Hudson v.*

5

*Palmer*, 468 U.S. 517, 526 (1984). They retain a right to be free from unnecessarily intrusive bodily searches, *Henry v. Hulett*, 969 F.3d 769, 779 (7th Cir. 2020), but Fye's allegations do not relate to this type of claim.

## MOTION FOR PRELIMINARY INJUNCTION

Within his complaint, Fye requests immediate injunctive relief related to his need for protection from other inmates. (ECF 1 at 8.) Giving his filing liberal construction, the court will construe it as a motion for a preliminary injunction. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id*. at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022).

Instead, the court must endeavor to assess the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions—"those requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is limited. "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting). The court also must consider the Supreme Court's admonition that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

At present, the court only has Fye's version of events, and it is difficult to assess whether he is currently at risk of harm in WCU, or whether there are any immediate plans to return him to general population. In light of the deference owed to prison

officials in the management of their facilities and the limitations on granting injunctive relief in the correctional setting, the court will order the Warden to respond before taking further action on Fye's request for a preliminary injunction.

For these reasons, the court:

(1) **GRANTS** the plaintiff leave to proceed against the Warden of Westville Correctional Facility in his official capacity for injunctive relief related to the plaintiff's ongoing need for protection from inmates at that facility;

(2) **DISMISSES** all other claims;

(3) **DISMISSES** Shannon Smith as a defendant;

(4) **DIRECTS** the clerk to separately docket the complaint (ECF 1) as a motion for a preliminary injunction;

(5) **DIRECTS** the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) the Warden of Westville Correctional Facility by email to the Indiana Department of Correction with a copy of this order and the complaint (ECF 1) pursuant to 28 U.S.C. § 1915(d);

(6) **DIRECTS** the clerk to fax or email a copy of the same documents to the Warden of Westville Correctional Facility at Westville Correctional Facility;

(7) **ORDERS** the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available;

(8) **ORDERS** the Warden to file and serve a response to the plaintiff's motion for a preliminary injunction no later than **July 30, 2025**, with supporting documentation and declarations from staff as necessary, addressing his current need for protection from other inmates and, if applicable, the steps being taken to protect him from harm; and

(9) **ORDERS** the Warden to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on June 12, 2025.

/s/*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT